AO 106A (08/18) Application for a Warrant by Telephone or Other Reliable Electronic Means

United States Courts
Southern District of Texas
FILED
*July 14, 2020*
David J. Bradley, Clerk of Court

# UNITED STATES DISTRICT COURT
for the
Southern District of Texas

| In the Matter of the Search of | ) | |
|---|---|---|
| *(Briefly describe the property to be searched or identify the person by name and address)* | ) ) | Case No. **3:20-mj-103** |
| Richard Reyes Trigo 1507 Airline Court, Rosharon, Texas | ) ) ) | |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment "A"

located in the **Southern** District of **Texas**, there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment "B"

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:
- ☑ evidence of a crime;
- ☑ contraband, fruits of crime, or other items illegally possessed;
- ☐ property designed for use, intended for use, or used in committing a crime;
- ☑ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| Title 18, USC 2251 | Production of Child Pornography |
| Title 18, USC 2252A | Distribution of Child Pornography |

The application is based on these facts:
See attached affidavit

☑ Continued on the attached sheet.
☐ Delayed notice of _____ days *(give exact ending date if more than 30 days: _____)* is requested under 18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Applicant's signature*

Patrick M. York, FBI Special Agent
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by _____ *(specify reliable electronic means)*.

Date: 07/14/2020

City and state: Houston, TX

*Judge's signature*

Andrew Edison, United States Magistrate Judge
*Printed name and title*

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

**IN THE MATTER OF:** §
1507 Airline Court § Case No. __3:20-mj-103__
Rosharon, Texas 77583 § **(FILED UNDER SEAL)**

## AFFIDAVIT IN SUPPORT OF APPLICATION

**I.    Introduction:**

Your Affiant, Patrick M. York, being duly sworn, deposes and says:

**A.    Introduction and Agent Background:**

1. I make this affidavit in support of an application for a search warrant for the residence located at 1507 Airline Court, Rosharon, Texas, 77583. As set forth herein, there is probable cause to believe that in that property there exists evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of Title 18, United States Code, Sections 2251, 2252A, et seq, which are further described in Attachment B.

2. I am a Special Agent of the Federal Bureau of Investigation (FBI) currently assigned to the Houston Division Texas City Residence Agency investigating violent crime matters, which includes crimes against children. I have been a Special Agent of the FBI since February 2009. While in the FBI, I have been assigned to a violent crime squad investigating and assisting with investigations of gangs, drugs, fugitives, crimes against children, and crimes in Indian Country, which include sexual assaults, aggravated assaults, and homicides. Prior to the FBI, I was a Texas Peace Officer for over twelve years.

3. I am charged with the duty of investigating violations of the laws of the United States, collecting evidence in cases in which the United States is or may be a party in interest, and performing other duties imposed by law. During my assignment with the FBI, I have participated in the execution of search warrants for documents and other evidence, including computers and electronic media, in cases involving child pornography and the sexual exploitation of children. I have assisted with investigations involving child pornography and the sexual exploitation of children. I have also attended various FBI training for the investigation and enforcement of federal child pornography laws in which computers are used as the means for receiving, transmitting, and storing child pornography

1

as defined in Title 18, United States Code, Section 2256.

**B.  Facts and Circumstances:**

4. The statements in this affidavit are based upon my investigation, information provided to your Affiant by Special Agents and Task Force Officers (TFO) of the FBI, public source and business records, and my experience and background as a Special Agent of the FBI. Since this affidavit is being submitted for the limited purpose of securing a search warrant, I have not included each and every fact known to me concerning this investigation. I have set forth only the facts that I believe are necessary to establish probable cause to believe that evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of Title 18, United States Code, Sections 2251 and 2252A (Certain activities relating to material constituting or containing child pornography), et seq, are currently located at 1507 Airline Court, Rosharon, Texas 77583. The evidence of a crime, contraband, fruits of a crime, and other items illegally possessed in violation of the aforementioned statute include, but are not limited to, computers, computer-related equipment, and visual images depicting minors engaged in sexual activity.

**C.  Statutory Authority:**

5. This investigation concerns alleged violations of Title 18, United States Code, Section 2252A(5)(B), which states

(a) Any person who—

(2) knowingly receives or distributes—

    (A) any child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer; or

    (B) any material that contains child pornography that has been mailed, or using any means or facility of interstate or foreign commerce shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

(5) (B) knowingly possesses, or accesses with intent to view, any book, magazine, periodical, film, videotape, computer disk, or any other material that contains an image of child pornography that has been mailed, or shipped or transported using any means or facility of interstate or foreign commerce or in or affecting interstate or foreign commerce by any means, including by computer, or that was produced

      using materials that have been mailed, or shipped or transported in or affecting interstate or foreign commerce by any means, including by computer;

6. Title 18, United States Code, Section 2256(8) defines "child pornography" as any visual depiction, including any photograph, film, video, picture, or computer or computer-generated image or picture, whether made or produced by electronic, mechanical, or other means, of sexually explicit conduct, where--

(A) the production of such visual depiction involves the use of a minor engaging in sexually explicit conduct;

(B) such visual depiction is a digital image, computer image, or computer-generated image that is, or is indistinguishable from, that of a minor engaging in sexually explicit conduct; or

(C) such visual depiction has been created, adapted, or modified to appear that an identifiable minor is engaging in sexually explicit conduct.

7. Title 18, United States Code, Section 2256(2)(A) defines "sexually explicit conduct" as actual or simulated--

(i) sexual intercourse, including genital-genital, oral-genital, anal-genital, or oral-anal, whether between persons of the same or opposite sex;

(ii) bestiality;

(iii) masturbation;

(iv) sadistic or masochistic abuse; or

(v) lascivious exhibition of the anus, genitals or pubic area of any person.

**D.**    **Background on Computers and Child Pornography:**

8. Computers and computer technology have revolutionized the way in which individuals interested in child pornography interact with each other. Child pornography formerly was produced using cameras and film (either still photography or movies). The photographs required darkroom facilities and a significant amount of skill in order to develop and reproduce the images. There were definable costs involved with the production of pornographic images. To distribute these on any scale required significant resources. The photographs themselves were somewhat bulky and required secure storage to prevent their exposure to the public. The distribution of these wares was accomplished through a combination of personal contacts, mailings, and telephone calls. Any reimbursement would follow these same paths.

9. The development of computers has changed this. Computers basically serve four functions in connection with child pornography: production, communication, distribution, and storage.

10. People involved in child pornography can now transfer photographs from a camera onto a computer-readable format with a device known as a scanner. With the advent of digital cameras, the images can now be downloaded directly onto a computer. Individuals can also reproduce both still and moving images directly from a common video camera. The camera is attached, using a cable, directly to the computer using a device called a video capture board. This device turns the video output into a format that is usable by computer programs. The output of the video camera can be stored, manipulated, transferred, or printed directly from the computer.

11. The captured images are similar to photographs. The images can be printed, edited, lightened, darkened, cropped, and manipulated in a wide variety of ways. As a result of this technology, it is relatively inexpensive and technically easy to produce, store, and distribute child pornography. There is an added benefit to the individual involved in child pornography in that this method of production does not leave as large a trail for law enforcement to follow as other methods.

12. Previously, as a general matter, a person involved in child pornography had to rely on personal contact, United States Mail, and telephonic communications in order to sell, trade, or market child pornography. The development of the computer has also changed that. A device known as a modem allows any computer to connect to another computer through the use of telephone, cable, or wireless connection. By connection to a host computer, electronic contact can be made to literally millions of computers around the world. A host computer is one that is attached to a dedicated network and serves many users. These host computers are sometimes commercial online services which allow subscribers to dial a local number and connect to a network, which is in turn connected to its host systems. Peer-to-peer software can be used to trade computer files, including digital images and pictures. The software allows users to download files that others, on the same peer-to-peer network, are sharing. Specific criteria can be used to sort through millions of shared files, somewhat anonymously, to download and/or trade images and/or videos of child pornography. This communication structure is ideal for the child pornography collector, possessor, or

producer.

13. The open and anonymous communication allows the user to locate others of similar inclination and still maintain their anonymity. Once contact is established, it is possible to send messages and graphic images to a trusted person with similar interests. In addition to the use of large service providers, pornographers can use standard Internet connections, such as those provided by businesses, universities, and government agencies to communicate with each other and distribute pornography. These communication links allow contacts around the world in a relatively secure and anonymous format.

14. The computer's ability to store images in digital format makes the computer itself an ideal repository for pornography. A single CD can store thousands of images and pages of text. The size of the electronic storage media (commonly referred to as the hard drive) used in home computers has grown tremendously within the last years. Hard drives with a capacity of more than 500 gigabytes are common. These drives can store thousands of images at very high resolution. Magnetic storage located in host computers adds another dimension to the equation. It is possible to use a video camera to capture an image, to process that image in a computer with a video capture board, and to save that image to a storage medium in another location. Once this is done, there is no readily apparent evidence at the scene of the crime. It is only with careful laboratory examination of electronic storage devices that it might be possible to recreate the evidence trail.

15. The ability to produce child pornography easily, reproduce it inexpensively, and market it anonymously (through electronic communications) has drastically changed the method of distribution of child pornography. This pornography can be electronically mailed to anyone with access to a computer and the means to access the Internet. With the proliferation of commercial services and chat services, the computer has become one, if not the preferred, method of distribution of pornographic materials.

16. A computerized depiction of child pornography is often stored and referred to as a GIF, short for Graphic Interchange Format, or a JPEG, short for Joint Photographic Experts Group. These image files often contain images or photographs that have been converted into a computer format by the use of a scanner. A single image may be recorded as a single computer file. However, a file may contain two or more images (sometimes more than 100), and these files are often referred to as ZIP files, referring to their compressed archive format.

Another type of file is called an MPEG, short for Moving Picture Experts Group. An MPEG is a file containing a movie or video clip.

17. An Internet Protocol (IP) address is a unique number that devices such as computers, routers, internet fax machines, printers, etc. use in order to identify and communicate with each other over a network. Each device must have its own unique IP address. An IP address can be thought of like a street address. Just as a street address identifies a particular building an IP address identifies a particular computer or network device. When a user logs on to his/her Internet Service Provider (ISP) they are assigned an IP address for the purpose of communication over the network. ISPs keep records of who IP addresses are assigned to by date and time. When served with a subpoena ISPs can provide the computer account associated with a designated IP address at a particular date and time.

E. **Social Networking Sites and Kik Messenger Background**

18. "Social networking" or "social network service" is a term used to describe applications or websites which focus on establishing networks or relationships among individual users based on interests or activities. These services typically consist of a personal online representation of an individual, often referred to as a profile, a list of other individuals with which a person has interests are allowed to view their profile, and a variety of other capabilities, such as the upload and sharing of images and videos. Newer capabilities allow access to the social networks via mobile devices such as cellular telephones and the upload of real-time information to an individual's profile. Most, if not all, of the social networks are accessible via the Internet and allow a member to contact other members via electronic mail (e-mail), instant messaging, or comments placed directly to a member's profile. Normally, information posted by individuals to their own or another individual's profiles are not vetted for accuracy or content.

19. Kik is an instant messaging application for mobile devices. The app is available on most iOS, Android, and Windows Phone operating systems free of charge. Kik uses a smartphone's data plan or Wi-Fi to transmit and receive messages. Kik also allows users to share photos, sketches, mobile webpages, and other content. Prior to use, Kik Messenger requires users to register an account with a username and password.

F. **Characteristics of an Individual with Sexual Interest in Children:**

20. My training, experience, and discussions with other investigators who have investigated

child pornography and the exploitation of children for many years, have taught me that persons who have a sexual interest in children and/or who produce, trade, distribute, or possess depictions of minors engaged in sexually explicit conduct generally exhibit the following characteristics:

a. These people view children as sexual objects and receive gratification from sexually explicit images of minors.

b. These people collect sexually explicit images of minors that they use for their own sexual gratification and fantasy. The majority of these individuals also collect child erotica, which may consist of images or text that do not rise to the level of child pornography but which nonetheless fuel these individuals' deviant sexual fantasies involving children.

c. My training, experience, and discussions with other investigators have further taught me that these people tend to keep their images for periods exceeding several years. They keep these sexually explicit images of minors for such long periods of time because the images are treated as prized possessions. They store such images in different formats including photos, printouts, magazines, videotapes, and digital media formats such as hard drives, diskettes, and CDs. In addition, they store such images in different places, including their home, their office, their car, and other areas under their control.

d. These people use sexually explicit images of minors as a means of reliving fantasies or actual sexual encounters. They also use the images as keepsakes and as a means of gaining acceptance, status, trust, and psychological support by exchanging, trading, or selling the images to other people with similar interests either in person or via the Internet. The different Internet-based vehicles used by such individuals to communicate with each other include, but are not limited to, e-mail, e-mail groups, bulletin boards, Internet Relay Chat, newsgroups, instant messaging, and other similar vehicles.

e. These people go to great lengths to conceal and protect from discovery their collection of sexually explicit images of minors. They may have passwords used to access programs or control encryption written down either in the vicinity of their computer or on their person (for instance, in their wallet or an address book).

f. These people maintain images of minors with whom they have had sexual contact. If a picture of a minor is taken by such a person depicting the minor in the nude, there is a high probability that the minor was used to produce sexually explicit images to be traded with

people with similar interests.

**G.     Probable Cause and Supporting Determinations:**

21. On Monday July 13, 2020, a FBI Washington Field Office (WFO) Task Force Officer, was acting in an undercover (UC) capacity as part of the Metropolitan Police Department-Federal Bureau of Investigation ("MPD-FBI") Child Exploitation Task Force, operating out of a satellite office in Washington, D.C. In that capacity, the UC posted an online bulletin message on a specific social media forum known to the UC as a website where users meet to discuss and trade child pornography and child erotica among other things. This site is forum based and offers users an internal email in which they can communicate with other users. Users can start a conversation thread and title the topic for all users to view. Users can respond to the thread for all users to see.

22. On July 4, 2020, the UC posted an advertisement on this site. This advertisement was refreshed on Friday, July 10, 2020. The advertisement read, "33 yo dad into very dark taboo, looking for other younger moms/dads into same." The UC added his KIK[1] account name to the advertisement.

23. On July 13, 2020, the UC received a private KIK message from a KIK user using the screen name, "joe12joe126969" with a display name of, "Joe Jen". This user was subsequently identified as Richard Reyes TRIGO. During the course of the chat TRIGO identified himself as a 36 year-old male residing in Texas. TRIGO informed the UC that he was married and had purported daughters of ages 2 and 9. During the course of the chat TRIGO made the following comments regarding his kids, "Love spying on them when they are in the shower". "I want to get a spy cam in the house."

24. During the course of the chat TRIGO stated that he was sexually active with his purported 2 year-old daughter. TRIGO stated that he has performed oral sex on her vagina and anus and has rubbed his penis on her body. TRIGO further stated, "Yes love to cum on their feet even get a little on my finger and put it to mouth" During the course of the chat TRIGO informed the UC that he had, "pussy pics" of his purported 2 year-old daughter who he later described as being 1 and a half. During the course of the chat the UC informed TRIGO that he was sexually active with his purported 8 year-old daughter. The UC sent TRIGO a

---

[1] KIK is an instant messaging mobile application where one can transmit and receive messages, photos, and videos. Users can communicate privately with other users or in groups.

clothed image of his purported daughter (not a real child)[2]. TRIGO sent the UC an image of his purported daughter's bare vagina. The picture is a close up shot of what appears to be a toddler's vagina. A males hand is seen touching the toddlers inner thigh.

25. During the course of the chat TRIGO stated that he met a friend that resides close to him in Texas. TRIGO stated that he has invited this friend over and allowed him to have sexual contact with his purported daughter. TRIGO stated he invites him over when he knows that his wife will be out of the house. During the course of the chat TRIGO stated that he was at work and informed the UC that he would be home at 6pm. TRIGO stated, "Love to show you live pics of her."

26. On July 13, 2020, at approximately 8:08pm EST TRIGO sent the UC a live camera image of a toddler child. The image depicted the toddler's buttocks from the side and she appeared to be on her knees. A light purple shirt can be seen on the toddler. The UC asked TRIGO if he could hold up 3 fingers near the toddlers head in an attempt to ascertain if TRIGO had immediate access to a real kid. TRIGO complied and sent the UC an image of himself holding up 3 fingers near his child's head. The child is wearing the same purple shirt as described above.

27. During the course of the chat TRIGO stated that he took his purported child's diaper off and was "playing" with her. TRIGO stated that he was rubbing his penis on his child's vagina and was licking her vagina and anus. TRIGO sent the UC a live camera image of his daughter's bare vagina. The focus of the image is on the child's bare vagina. A male has his fingers on her thigh. The same purple shirt can be seen on the child as described above.

28. On Tuesday July 14, 2020, the UC continued to communicate with TRIGO. TRIGO sent the UC an image of his purported wife. The picture was that of a clothed Hispanic female. During the course of the chat the UC asked TRIGO about the friend that he allows access to his daughter. TRIGO stated, "He plays with my youngest. He puts his dick to her mouth."

29. An emergency disclosure form was submitted to Kik c/o MediaLab requesting subscriber identification and IP logs associated with username joe12joe126969. Kik's response provided display name "Joe Jen", unconfirmed email address remjoe735@gmail.com,

---

[2] The images the UC sent to TRIGO did not depict a real child.

device description Samsung android SM-N950U, and IP logs spanning June 15, 2020 through July 14, 2020. Examination of the IP logs yielded a combination of AT&T Wireless, T-Mobile Wireless, and Hughes Network IP addresses.

30. An administrative subpoena was served on Hughes Network requesting subscriber identification and service address information associated with IP address 67.44.192.96 Port 34078 on June 30, 2020 at 18:53:20 UTC. This was the only non-wireless IP address in the logs provided by Kik. Hughes' response identified the subscriber as Maria Fuentes, with a service address of 1507 Airline Court, Rosharon TX 77583.

31. Upon receipt of this information, FBI Washington used available open source (e.g., Google, Facebook), commercial (e.g., Accurint), and law enforcement sensitive (e.g., NCIC, Texas DMV) databases to fully identify the suspected user of Kik account joe12joe126969 as Richard Reyes TRIGO (DOB: 12/07/1985). TRIGO has no identifiable criminal history. His wife was identified as Ericka Genev Villarreal. Social networking profiles were identified as belonging to TRIGO (www.facebook.com/richard.trigo.7) and Villarreal (www.facebook.com/ericka.villarreal.39). A Driver's license photo of Villarreal matched the image that Trigo sent the UC of his wife. Publicly available photographs on Villarreal's profile provide an images of minor female relatives that appears to match the same age as the child depicted in the illicit photos that Trigo sent the UC.

**H.  Conclusion:**

32. Due to law enforcement being unable to locate TRIGO at the time of signing of this affidavit, law enforcement believes the minor child is in imminent danger if law enforcement were to wait until a later time to execute the search warrant and arrest warrant. Affiant is requesting this search warrant be executed any time of the day or night.

33. In consideration of the foregoing, I respectfully request that this court issue a search warrant for the premises known as 1507 Airline Court, Rosharon, Texas 77583, authorizing the search of the aforementioned premises for the items described in Attachment B and the seizure of such items for the purpose of searching and analyzing them.

_____
Patrick M. York
Special Agent
Federal Bureau of Investigation

Subscribed and sworn before me telephonically me this 14th day of July 2020, and I find probable cause.

_____
Andrew M. Edison
United States Magistrate Judge

## ATTACHMENT A

## LOCATION TO BE SEARCHED

1507 Airline Court, Rosharon, Texas 77583 is a single-family modular-type home located on the north side of Airline Court, located in Brazoria County, within the Southern District of Texas. The house exterior is made with brown siding with white trim around the windows. The front door, with a storm door, faces south and are both white in color. There is a set of white colored steps leading to the front door. A dirt driveway leads to the home, with a Summerland travel trailer parked in the driveway ajacent to and on the east side of the home. A mailbox with the numbers "1507" is located next to the driveway.



## ATTACHMENT B

## PROPERTY TO BE SEIZED

a. Any and all tapes, cassettes, cartridges, streaming tape, video tape, commercial software and hardware, computer related documentation, computer usernames and passwords, computers, hard drives, computer disks, CDs, DVDs, memory storage devices, disk drives, monitors, computer printers, modems, tape drives, disk application programs, data disks, system disk operating systems, magnetic media floppy disks, gaming devices, electronic mail, tape systems, routers, digital records stored on any electronic device, and other computer-related operation equipment, in addition to computer photographs, Graphic Interchange formats and/or photographs, film cameras, digital cameras, video cameras, camera phones, internet or data storing capable phones, slides, scanners, other digital, photographic, or video recording devices, other digital or video recording players, or other visual depictions of such Graphic Interchange format equipment which may be, or are used to visually depict child pornography, child erotica, information pertaining to the sexual interest in child pornography, sexual activity with children or the distribution, possession or receipt of child pornography, child erotica or information pertaining to an interest in child pornography or child erotica.

b. In any format and medium, all originals and all copies of negatives, computer files that depict digital photographs, film photographs, film, and all visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

c. Any and all notes, documents, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files, and handwritten notes) pertaining to the possession, transmission through interstate commerce including by United States Mails or by computer, receipt, or distribution of child pornography or the visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children, whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

d. Any and all books, magazines, and ledgers pertaining to the possession, receipt, distribution, production, reproduction, shipment, orders, requests, trades, purchases, or transactions of any kind involving the transmission, through interstate commerce including by United States Mails or by computer, of child pornography or the visual depictions of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children, whether transmitted or received using computer, a facility or means of interstate commerce, common carrier, or mail.

e. Any and all address books, mailing lists, names, supplier lists, mailing address labels, and any and all documents and records pertaining to the preparation, purchase, and acquisition

of names or lists of names to be used in connection with the purchase, sale, trade, or transmission, through interstate commerce including by United States Mails or by computer, any visual depiction of minors engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

f. Any and all address books, names, and lists of names and addresses of minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

g. Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) reflecting personal contact, communications, and any other activities with minors visually depicted while engaged in sexually explicit conduct, as defined in Title 18, United States Code, Section 2256, child erotica or pertaining to a sexual interest in children.

h. Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) concerning communications between individuals about child pornography or the existence of sites on the Internet that contain child pornography or that cater to those with an interest in child pornography.

i. Any and all notes, documents, records, diaries or correspondence, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) concerning membership in online groups, clubs, or services that provide or make accessible child pornography to members.

j. Any and all records, documents, invoices and materials, in any format or medium (including envelopes, letters, papers, e-mail messages, chat logs, and electronic messages, other digital files and handwritten notes) that concern online storage or other remote computer storage, including, but not limited to, software used to access such online storage or remote computer storage, user logs or archived data that show connection to such online storage or remote computer storage, and user logins and passwords for such online storage or remote computer storage.

k. Any and all documents, records, or correspondence, in any format or medium (including, but not limited to, envelopes, letters, papers, email messages, chat logs and electronic messages, and other digital data files), pertaining to occupancy or ownership of the premises described above and ownership of the Internet Service Provider, including, but not limited to, rental or lease agreements, mortgage documents, rental or lease payments, utility and telephone bills, internet service provider bills, mail envelopes, or addressed correspondence.

l. Physical evidence related to the sexual abuse of a child including sexual devices, lubricants, child's clothing/underwear, bondage and discipline paraphernalia, and any other items used to sexually or physically abuse or exploit a child in violation of federal law.

m.  Physical evidence related to correspondence with other persons or groups interested in sexual behavior with children, and any and all diaries or other records related to child sexual partners, including phone or address books in which the suspects have recorded names, addresses, and phone numbers of child sexual partners.

n.  Any and all physical evidence depicted in the sexually explicit images.

o.  Purple child sized t-shirt worn by victim.

p.  White with blue floral print bed linen or pillow covering.

q.  White with red, green, and blue print bed linen.